## Murphy *v.* Pittsburgh Railways Company, Appellant.

Argued March 15, 1966. Before Musmanno, Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

*John Ward Hindman,* with him *Prichard, Lawler & Geltz,* for defendant, Pittsburgh Railways Company, appellant.

*James F. Manley,* with him *Burns & Manley,* for additional defendants, appellants.

*Frank J. Kernan,* with him *P. J. McArdle,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 2, 1966:

Mrs. Jean F. Murphy, 74 years of age, was walking up Central Way in Mt. Lebanon, a sidewalkless alley about 18 feet wide, when a Pittsburgh Railways bus turning into Central Way from Central Square bore down on her, and, in order to escape being struck, she fled to the left of the alley and fell into a window well of a building owned by Phillip J. Mallin and others, whose names do not need to be enumerated here. She sustained injuries in her fall and she filed suit against

the Pittsburgh Railways Company, which brought in the owners of the building as additional defendants.

The jury returned a verdict in favor of the plaintiff in the sum of $20,000 against the traction company and the proprietors of the building, all of whom appealed. We will consider first the appeal of the Pittsburgh Railways Company which argues that Mrs. Murphy's mishap was due to her own negligence and not because of any fault on its part. It contends that Mrs. Murphy, because of her advanced age and a defective vision, misinterpreted the action of the bus driver since the bus could not have entered the alley in the way described by the plaintiff. She testified that the bus turned the corner fast "and it was bouncing, just bounced around."

The plaintiff refuted the charge that her vision was inadequate and testified that her left eye had full vigor and that she had no trouble reading, judging distances, shopping etc. It would appear that, even if her eyesight was not of the best she could see better in the alley than the bus driver, since he testified that when he would enter into the alley he would not look to see if there were any people there!

An expert witness for the defendant traction company testified that it was impossible for the bus to have entered into the alley in the manner described by Mrs. Murphy because it was necessary, in turning from Central Square into Central Way, to make a sharp right-hand turn and that, in doing so, the speed of a bus would necessarily be not more than three miles an hour; also that, after entering Central Way, the bus would take a straight course down the alley way and that, doing this, it would have had to collide with a telegraph pole before coming to where Mrs. Murphy was. This, however, is all hypothesis predicated on the assumption that the bus driver would turn the corner properly and proceed properly into the alley. When hypothesis collides with fact, it is fact that must prevail—or should. In this instance the jury chose to

believe what Mrs. Murphy said actually happened, rather than what the bus driver said should have happened if he had been the bus driver, who operated the bus involved in the episode, which he was not.

Mrs. Murphy testified that the bus charged toward her in such a direct line that when she went down into the window well she could feel the rush of air as the heavy vehicle passed over her. Even in the well she had to crouch to make certain that no part of the equipment might come into contact with her. She said: "I was holding my head down and trying to make myself get down as far as I could so I wouldn't be struck."

If the accident happened as the plaintiff described it, and the jury so found, it was justified in returning a verdict against the traction company. However, a different situation presents itself with regard to the owners of the building. It would be a strange turning of the wheels of justice to hold them liable for giving Mrs. Murphy refuge from what might have been death or more serious injuries than she actually sustained in leaping into the foxhole of safety from the traffic bombardment above.

There is no evidence in the case that the window well involved in the accident was improperly constructed or that it was in the lane usually employed by pedestrians in the alley. In any event the window had no more to do with Mrs. Murphy's mishap than if, in fleeing from the bus, she had burst into a door which opened at the head of a stairway and she had tumbled down the stairs. Mrs. Murphy testified: "Q. . . . The only reason you deviated from the distance that you had from the curb as you were walking in a northerly direction up the hill of Central Way, I believe it is, the only reason you went to your left was to avoid the bus; isn't that correct? A. Yes. . . . Q. And but for the bus coming around that corner, you would have continued to walk straight in the same path that you had already been walking in; isn't that right? . . . A.

Well, if it hadn't been there, yes.  Q.  And the bus is the thing that occasioned you to step to your left into the window well?  A.  Yes."

The verdict against the additional defendants must be reversed.

The original defendant seeks a new trial on the basis of an excessive verdict.  The record shows that Mrs. Murphy suffered a comminuted fracture of the tibia near the right knee with hemarthrosis of the knee joint. She was confined to the hospital for 48 days, wearing a cast from hip to toes.  Her medical expenses were $1,812.60.  Returning home she was confined to bed for weeks and then to a wheelchair for months.  Her daughter testified that she had to learn to walk "all over again," using in this process a "walker with a seat on it and a strap in the back."  She cannot stand for any period of time and must be accompanied when she moves about.

Although she had some heart trouble in 1956 she seemed to have recovered from it and needed no medical attention from 1957 on.  Although prior to the accident she enjoyed going out to shop, attend concerts and watch movies, she is now more or less housefast and is terrified of traffic.  It can be said with some seriousness that the accident has taken most of the joy of life out of her.  The lower court was not shocked by the amount of the verdict, and we are satisfied the evidence supports the amount of the verdict.

Judgment affirmed against the Pittsburgh Railways Company and judgment n.o.v. entered in favor of the additional defendants.

Mr. Justice ROBERTS concurs in the result.

DISSENTING OPINION BY MR. JUSTICE COHEN:

I must dissent from that portion of the majority opinion which enters judgment non obstante veredicto in favor of the additional defendants.

After hearing the evidence the jury rendered a verdict for the plaintiff against all defendants and the trial judge denied their motions for judgment notwithstanding the verdict. The applicable rule for review of a case in this posture is to "give the jury winner the benefit of every fact and inference of fact which may be reasonably deduced from the evidence", *Evans v. Philadelphia Transportation Company,* 418 Pa. 567, 212 A. 2d 440 (1965).

The jury could have reasonably found that the maintenance of an uncovered window well in a paved alley frequently used for pedestrian and vehicular traffic was negligence. Restatement 2d, Torts, §368; See *Gift v. Palmer,* 392 Pa. 628, 141 A. 2d 408 (1958).

The jury also could have reasonably found that the negligence of all defendants caused the loss for which suit was brought. The injuries suffered by Mrs. Murphy resulted from her fall into the window well and were not caused by impact from the bus. Apprehension of such an impact, however, directed her to the edge of the alley and precipitated her fall. Thus, additional defendants' conduct was so substantial a factor in bringing about plaintiff's injuries that, coupled with the foreseeability that to avoid oncoming traffic one might have to hurriedly approach the edge of the alley, original defendant's negligence could not be an intervening cause sheltering additional defendants from liability. Restatement 2d, Torts, §447 (a) ; *Stark v. Lehigh Foundries, Inc.,* 388 Pa. 1, 130 A. 2d 123 (1957).